JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❑ 1   U.S. Government
       Plaintiff

❑ 3   Federal Question
       (U.S. Government Not a Party)

❑ 2   U.S. Government
       Defendant

❑ 4   Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | **IMMIGRATION** | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | ❑ 463 Habeas Corpus - | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | Alien Detainee | | ❑ 950 Constitutionality of |
| | Other | | ❑ 465 Other Immigration | | State Statutes |
| | ❑ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

❑ 1   Original
       Proceeding

❑ 2   Removed from
       State Court

❑ 3   Remanded from
       Appellate Court

❑ 4   Reinstated or
       Reopened

❑ 5   Transferred from
       another district
       (specify)

❑ 6   Multidistrict
       Litigation

❑ 7   Appeal to District
       Judge from
       Magistrate
       Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII.  REQUESTED IN
COMPLAINT:

❑  CHECK IF THIS IS A **CLASS ACTION**
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ❑ Yes   ❑ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.    Example:    U.S. Civil Statute: 47 USC 553
                                                                          Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MARYLAND**
_____X

DR. ROSE C. MERCHANT, Individually
6039 Glen Rock Avenue
Fort Washington Maryland, 20744
Prince Georges County                                    Plaintiff,


              -against-                                                        **Complaint**
                                                                               **Civil Action,**
                                                                               **File Number:**



FAIRFAX COUNTY, VIRGININA; SHARON BULOVA, FAIRFAX
COUNTY BOARD OF SUPERVISORS; OFFICER ROBERT M.
BAUER, Individually; OFFICER JONATHAN NYTES, Individually;
LIEUTENANT GERVAIS REED, Individually; and Does JOHN
DOE "1" THROUGH JOHN DOE "20" Both inclusive; JOHN DOE
"1" through JOHN DOE "20" regardless of number being each a
separate individual and being fictitious and unknown to the Plaintiff
the persons or parties intended being former and or current
Fairfax County Virginia employees
                                                                       Defendants.
_____X


         Dr. Rose C. Merchant, Plaintiff  (hereinafter "Plaintiff"), complaining of the actions by

defendants, Fairfax County, Sharon Bulova (hereinafter "Bulova"), Chairman At Large, Fairfax

County Board of Supervisors, Officer Robert M. Bauer (hereinafter "Bauer"), Police Officer

Jonathan Nytes  (hereinafter "Nytes"), Police Lieutenant Gervais Reed (hereinafter "Lt. Reed")

and Does JOHN DOE "1" THROUGH JOHN DOE "20" both inclusive; JOHN DOE "1"

through JOHN DOE "20" regardless of number being each a separate individual and being

fictitious and unknown to the Plaintiff the persons or parties intended being former and or

current Fairfax County Virginia employees (hereinafter "Does"), respectfully show to this Court

and allege the following:

## PRELIMINARY STATEMENT

1. The Plaintiff files this civil action pursuant to 42 U.S.C.A. § 1983, and Virginia Code sections 18.2-499 and 500, seeking damages against the Defendants for committing acts under the color of law, individually and collectively, which deprived the Plaintiff of her Fourth Amendment rights secured under the Constitution and laws of the United States, laws of the State of Maryland, and laws of the State of Virginia; for conspiring and agree to purposely impede and hinder the due course of justice, with intent to deny Plaintiff's Fourth Amendment rights secured under the Constitution, laws of the United States, laws of the State of Maryland, and laws of the State of Virginia; for refusing or neglecting to prevent such deprivations and denials to Plaintiff; and for causing great harm to the Plaintiff's business and profession..

2. The Defendants engaged in the malicious prosecution of the Plaintiff by maliciously arresting, imprisoning and prosecuting the Plaintiff without probable cause in direct in violation of the Plaintiff's Fourth Amendment rights, and the Defendants actions constituted malicious reckless disregard, and depraved indifference for the rights and liberties of the Plaintiff and were intended to injure and harm the Plaintiff in violation of 42 U.S.C.A. § 1983.

3. The Defendants conspired and agreed to purposely violate the Plaintiff's Fourth Amendment rights, privileges, and immunities, as guaranteed by the United States Constitution, laws of the United States, laws of the States of Maryland, and Virginia by having the Plaintiff arrested, imprisoned, and prosecuted without probable cause in direct violation of 42 U.S.C.A. § 1983.

4. Defendant Lt. Gervais Reed, Defendant Fairfax County, and Defendant Bulova in violation 42 U.S.C.A. § 1983 knowingly, recklessly, or with deliberate indifference and

callous disregard of Plaintiff's Fourth Amendment rights, privileges, and immunities, allowed, failed to instruct, supervise, control and discipline on a continuing basis Defendant Bauer, and Defendant Nytes in their official duties as members of the Fairfax County Police Department to refrain from: unlawfully and maliciously arresting, imprisoning and prosecuting the Plaintiff without probable cause in direct violation of the Plaintiff's Fourth Amendment rights, as guaranteed by the United States Constitution, laws of the United States, laws of the State of Maryland, and laws of the State of Virginia.

5. The Defendants maliciously, and out of hostility and ill will towards the Plaintiff conspired and agreed to purposely cause harm to the Plaintiff's private practice business, and reputation as a licensed professional psychologist, in violation of Virginia Code sections 18.2-499 and 500 by conspiring and agreeing to purposely violate the Plaintiffs Fourth Amendment rights, as guaranteed by the United States Constitution, laws of the United States, laws, to be free from prosecution without probable cause, in violation of 42 U.S.C.A. § 1983.

## SUBJECT MATTER JURISDICTION

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1331 and 1332, and 42 U.S.C.A. § 1983. Relief is authorized under 42 U.S.C.A. § 1983, Fourth Amendment as guaranteed by the United States Constitution, and the laws of the United States, laws of the State of Maryland, and laws of the State of Virginia, Virginia Code sections 18.2-499 and 500.

## VENUE

7. Venue is properly laid in this court under the provisions of 28 U.S.C.A. § 1391(b) by

reason of the fact that a substantial part of the events or omissions giving rise to the claims occurred.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

8. On February 12, 2009, Plaintiff timely filed Notice of Claims with Office of Fairfax County Attorney, alleging violations of the Plaintiff's constitutional rights; conspiracy to violate Plaintiff's constitutional rights; and malicious prosecution. (See Exhibit 1, Notice of Claim)

## PARTIES

9. At all times mentioned in this complaint, Plaintiff was, and now is, a resident of the City of Laurel Fort Washington, Prince George's County, Maryland.

10. At all times mentioned in this complaint, Plaintiff was formerly married, and known as Rose Coretta Clark, but professionally kept her maiden name Dr Rose C. Merchant. Plaintiff had her marriage to Mr. Clark annulled in 2009.

11. At all times mentioned in this complaint, Plaintiff, Dr. Rose C. Merchant was, has been, and now is a Professional Licensed Psychologist, in Maryland, Virginia, and District of Columbia with a private practice in the Clinton, Maryland, known to her colleagues, as exemplary, a leader, professional, and an intellect.

12. At all times material to this Complaint, Plaintiff was acting in accordance with her First and Fourth Amendment rights, privileges, and immunities as guaranteed by the United States Constitution, laws of the United States, laws of the States of Maryland, and Virginia.

13. Upon information and belief, defendant, Officer Robert M. Bauer of the Fairfax County Police Department (hereinafter "Defendant Bauer"), is a resident of the County of

Fairfax and State of Virginia.

14. Upon information and belief, defendant, Officer Jonathan Nytes of the Fairfax County Police Department (hereinafter "Defendant Nytes"), is a resident of the County of Prince William and State of Virginia.

15. Upon information and belief, defendant, Lieutenant Gervais Reed. of the Fairfax County Police Department (hereinafter "Defendant Lt. Reed"), is a resident of the County of Prince William and State of Virginia.

16. At all relevant times the Defendant Bauer, Defendant Nytes, and Defendant Lt. Reed were acting under the color of state law within the meaning of 42 U.S.C.A. § 1983 and under the guise and scope of their employment as police officers for Fairfax County Police Department.

17. Defendant Fairfax County is a municipal corporation organized, and existing under the laws of the State of Virginia. Defendant Fairfax County employed certain Defendant police officers who are the subject of this complaint.

18. Defendant Bulova, Chairman At Large, Fairfax County Board of Supervisors, is responsible for the acts of Defendant Fairfax County, and Defendant Fairfax County police officers while in of performance of their duties as police officers for Defendant Fairfax County. Defendant Bulova is also responsible for ongoing training of the Defendant police officers of Defendant Fairfax County to ensure that those Defendant police officers are competent to carry out their assigned duties.

## STATEMENT OF FACTS

19. The following allegations are based upon information and belief; actual police audio and video recordings taken on the day, and at the location where the alleged crime

occurred; a true copy of the transcripts of the police video and audio recordings; and a true copy of the trial transcripts of the Plaintiff's criminal trial (see Exhibit 2, a true copy of Plaintiff's Criminal Trial Transcript).

20. At Plaintiff's criminal trial, Assistant Commonwealth's Attorney, Fairfax County, Erin Sylvester, testified and confirmed, the alleged crime occurred on February 9, 2009, at the 7-11 parking lot. (See Exhibit 2, Trial Transcript Page 32, Line 3-7)

21. On or about 2/7/08 to 2/9/08, Defendant Bauer called the Plaintiff's home and left 2 voice mail message requesting the Plaintiff to contact him at 703-254-8035.

22. On Saturday, February 9, 2008, approximately 4:00 p.m. Plaintiff returned home and a neighbor informed her that a Prince George's County Police Office came by her home and asked her if she knew the Plaintiff, and if she had seen the Plaintiff that day.

23. On 2/9/08, Plaintiff retrieved her messages, called the 703-254-8035 but was unable to reach Defendant Bauer because that telephone number was registered to the US Federal Emergency Management Agency.

24. Subsequently, the Plaintiff searched, and located the actual phone number for Fairfax County Police Department Mason District. The Plaintiff called that number and was able to speak with Defendant Bauer.

25. During that telephone conversation, Defendant Bauer accused the Plaintiff of being involved in a traffic incident at 12:00 noon on or about February 7, 2008 or February 8, 2008, in her new 2008 Mercedes Benz S63 AMG. Plaintiff asked Defendant Bauer "What is this all about?" Plaintiff informed Defendant Bauer that she was at work both days at 12:00 noon.

26. Plaintiff informed Defendant Bauer that she is not the only person that drives the car and that her husband drives this vehicle sometimes. However, she did not know if he was driving it at noontime on the day in question. In addition, Plaintiff informed Defendant Bauer that she saw the vehicle earlier and that it had not been involved in any type of accident. Plaintiff informed Defendant Bauer that she would need to speak with her husband and then call him back.

27. Prior to the Plaintiff discontinuing the call, Defendant Bauer states to the Plaintiff "You're not cooperating with me." Plaintiff assured Defendant Bauer that she was cooperating with him. Plaintiff states "I too work for public safety. I am the Deputy Director at the Department of Corrections for Prince George's County, Maryland." Plaintiff let Defendant Bauer know that she was going to call her husband, and discontinued the phone call.

28. Plaintiff unsuccessfully attempted to do a 3 way call with her husband to talk to Defendant Bauer. Defendant Bauer did not answer his phone.

29. Then Plaintiff discontinued the call with her husband, and called Defendant Bauer directly. At that time Defendant Bauer made a comment that "she was playing games, and if you do not give me his information I am going to send a warrant for your arrest." Plaintiff reassured Defendant Bauer that she was not playing any games. However, Defendant Bauer refused to wait for her to make another attempt to call her husband on a 3 way. Defendant Bauer discontinued the phone call.

30. Then the Plaintiff's husband called Defendant Bauer directly. Defendant Bauer asked Plaintiff husband "so what happen, tell me what happen?" Plaintiff's husband was unaware of what Defendant Bauer was inquiring about. Defendant Bauer then accused

the Plaintiff's husband of being involved in a rear-end hit and run traffic accident with the Plaintiff's vehicle on Interstate 395 or Interstate 495 on 2/7/08 or 2/8/08 at 12:00 noon. Plaintiff's husband denied those allegations.

31. Plaintiff's husband volunteered to meet with Defendant Bauer immediately to resolve any issues and allow Defendant Bauer to inspect the Plaintiff's vehicle. Plaintiff's husband arranged time and location to meet with Defendant Bauer. Plaintiff and her husband drove more than 45 miles from their home located in Prince George's County Maryland to a designated location in Fairfax County, Virginia to meet with Defendant Bauer.

32. On or about 2/9/08 approximately 7:00 p.m. Plaintiff and her husband arrived at designated location to meet with Defendant Bauer. They waited approximately 15 minutes and then husband contacted Defendant Bauer and was told that we would need to meet at a different location the 7/11 on Hummer Road, Fairfax, Virginia.

33. On February 9, 2008, approximately 7:30 p.m. Plaintiff and her husband arrived at the second designated location, the 7/11 on Hummer Road in Fairfax County, Virginia. The Plaintiff placed her driver license, Employment ID and badge holder with badge (hereinafter "badge"), both issued by Prince George's County Department of Corrections, in her coat pocket for identification purposes. Plaintiff and husband exited her vehicle

34. The Defendants initiated their video cameras located in their police vehicles, and their audio microphones which were attached to their uniforms when the Plaintiff and her husband arrived at the 7/11 on Hummer Road. The Defendants audio and video

recorded the entire time the Plaintiff and her husband were in their presence. (See Exhibit 2, Trial Transcript Page 27, Line 13-22, and Page 28, Line 1-11)

35. The police video show the Plaintiff was wearing a short waist length light color jacket. Upon information and belief the jacket had very shallow pockets.

36. Upon information and belief, the Plaintiff's badge holder could be partially seen protruding from the jacket pocket at certain angles.

37. On police audio recording you hear Defendant Bauer state "Hey Sir, how are you doing. I'm Officer Bauer. I appreciate you coming out here. Sorry for the inconvenience. Just one thing real quick. Do you mind what we're going to do, just look inside, look outside, and I'm just going to look at the front, have you pop the hood and you guys are out of here." Plaintiff's husband replies "You want to look inside my car where?" Defendant Bauer states "just checking things out just to make sure you know."

38. The police video shows Defendant Bauer, Defendant Nytes, and Officer Brim begin to inspect Plaintiff's vehicle.

39. On the police audio recording you hear the Plaintiff asked "Can she get a card or something? Do we get to know who filed these false allegations against us?" Defendant Bauer reply "Well they're not false allegations. They're just allegations of a traffic incident. Plaintiff replied "Ok but it's false." Plaintiff's husband states "And I'm definitely going to pursue it.

40. Defendant Bauer replies "I hear what you're saying. Do you mind if I open the door just to check for switches up front?" Plaintiff's husband replies "There are no lights up here in the front why would there be switches up inside" Defendant Bauer replies "If I

turn my lights on, all my lights are inside the headlights. There are strobes that are in the thing. That's all. You came all the way out here you don't want me to be thorough. Excellent, ok."

41. At no time does the audio or the video recordings show Defendant Bauer, Defendant Nytes, Defendant Lt. Reed, or Officer Brim asking or requesting the Plaintiff or her husband to show any identification, even after Defendant Bauer maliciously lied and told his superior, Defendant Lt. Reed that the Plaintiff had in her possession a Badge but refused to show it to him.

42. Pursuant to the audio and video recording Defendant Bauer asked the Plaintiff "what do you want to show me?" Plaintiff's replied "I am not showing you anything. I just need to know the gentleman name who had us come out here."

43. The police video show the Plaintiff with her hands in her coat pockets before, during, and after Defendant Bauer asked the Plaintiff "What do you want to show me?"

44. Plaintiff informed Defendant Bauer they want the person's name who filed the report, because obviously it is a false police report filed on us, there is no damage to my vehicle and we want to file a police report on them for making false allegations against us." Defendant Bauer replied "You can have this case number as a reference."

45. The police video show Defendant Bauer, Defendant Nytes, Officer Brim continued to inspect the Plaintiff's vehicle, and found no damage or evidence that the vehicle was in any accident, not even a scratch; they found no blue and white police lights in the grill or embedded in the headlights of the Plaintiff's vehicle; and they did not find any switches in or on the Plaintiff's vehicle.

46. On the police audio recording you hear Plaintiff's husband state "There is no damage to the vehicle, not even a scratch on the front or anywhere on the car; there are no switches; and there are no blue and white police lights anywhere on the car." Defendant Bauer States "I agreed." Plaintiff request the person name again, who filed the false charges. Defendant Bauer refused to give it to her. Defendant Bauer offered to have his supervisor come to their location, Plaintiff agreed and requested his supervisor to come out.

47. Prior to Defendant Lt. Reed arriving, on the police audio recording you hear Defendant Bauer and Defendant Nytes, and Officer Brim in a private conversation. Defendant Bauer is lying and maliciously accusing the Plaintiff of showing him her badge. However, several seconds later you hear Defendant Nytes refuting Defendant Bauer's allegation, by stating "She didn't show it. It was in her palm."

48. The video recording shows the Plaintiff never showed her badge or was requested to show her badge to Defendant Bauer, Defendant Nytes, Defendant Lt. Reed, or Officer Brim.

49. Several minutes later, on the police audio recording you hear Defendant Bauer and Defendant Nytes expressing their malicious indifference to the Plaintiff. Defendant Nytes states "She's (referring to the Plaintiff) strange for someone who works in public safety to be that uncooperative too. " Defendant Bauer replied "She (referring to the Plaintiff) is not a police officer. I'm not sure exactly what she is. We couldn't find. We looked on the Website." Defendant Nytes states "I'd like to talk to her but I don't think she is going to. Defendant Bauer states "She's been hostile throughout. Defendant Nytes states "I know, the Plaintiff is being hostile, and would not talk." Defendant

Bauer stated "she is not a police officer, she is some Director of Fire and Public Safety, but we could not locate her on the website.

50. Defendant Nytes states "I tell you what though, have a look at that badge. I would have taken the badge. Defendant Bauer states "I'm not going to at this point. I'm not going to physically take it out. She wants a supervisor to come here, he can say listen, pull the badge out. Defendant Nytes states "You have the right to I think. There's a badge, now the badge doesn't even be legit. You verify the badge. I agree, you should call whoever her person is and verify she is who she is, you verify it.

51. The police audio and video show Defendant Lt. Reed arrives. On the police audio recording you hear Defendant Bauer giving Defendant Lt. Reed a status update of the situation. Defendant Bauer maliciously and intentionally lies and omits some of the facts as they occurred.

52. Defendant Bauer introduces Defendant Lt. Reed to the Plaintiff and her husband. Plaintiff and her husband lodge several complaints against Defendant Bauer:

   a. Defendant Bauer intentionally brought them out on false pretenses, by omitting that he was investigating not just a hit in run traffic accident but also looking for evidence of blue and white police lights installed on her vehicle; .
   b. Defendant Bauer stated she was being uncooperative with the investigation;
   c. Defendant Bauer was rude and disrespected her by falsely accusing her of playing games, and threatening to have an arrest warrant issued and sent to have Plaintiff arrested, although the Plaintiff had previously disclosed to Defendant Bauer that she worked in public safety, was the Deputy Director of Department of Corrections for Prince George's County, and assured him that she was fully cooperating;
   d. Defendant Bauer accused her and her husband of committing the alleged traffic incident without inspecting her vehicle to see if the vehicle was involved in any accident or if the vehicle had blue and white police lights installed;
   e. Plaintiff complained that Defendant Bauer refused to provide them the name of the complaining witness who reported the incident, so they could file charges against him, because the allegations were 100% false; and

      f.   Plaintiff complained that Defendant Bauer blatantly lied by stating that the Plaintiff had pulled out a badge, and never disclosed to him her position as Deputy Director of Corrections for Prince George's County, and she worked in public safety.

53. Defendant Bauer attempted to explain the facts as they occurred, the Plaintiff states "I only want to speak with Defendant Lt Reed, because you couldn't explain to me things before when I asked them." Defendant Bauer states "I did explain then."

54. The audio and video recordings show the Plaintiff informed Lt Reed that "I am Deputy Director for Department of Corrections for Prince George's County I work in public safety, I am second in charge and I do not appreciate Defendant Bauer talking to me in that manner."

55. On the police audio recording, you hear the Plaintiff requesting the Defendants not to refer to Prince George's County as PG County, it actually Gorgeous Prince Georges County, Defendant L. Reed, states PG County is not gorgeous at all, I have been there before.

56. On the police audio recording, you hear the Plaintiff requesting an apology from Defendant Lt. Reed for his Defendant Bauer's actions. Plaintiff states "If he (Defendant Lt. Reed) is not going to discipline him, I'm going to put a complaint in." Plaintiff further states it's not doing any good. He's (Defendant Lt. Reed) not going to do anything to his officer, it's a blue code. So let's leave please. Good bye, thank you."

57. Defendant Lt. Reed did not offer any apology or any statements after the Plaintiff made her complaints and statements regarding Defendant Bauer's actions, except: it was a miscommunication regarding the location of the vehicle inspection, and police interview, and he agreed with Defendant Bauer that Plaintiff was not cooperating by

asking what is this all about" Defendant Lt. Reed states "Right., he's asking questions trying to get information and you're asking him questions."

58. .  Defendant Nytes attempts to incite, and motivate Defendant Bauer to violate the Plaintiff rights, (see above paragraph 48) and later by coming off patrol to personally arrest the Plaintiff, although the Plaintiff had turned herself in at the Fairfax County Detention Center 45 minutes to an hour before he arrived. (See forth below paragraph 86-90).

59. Defendant Lt. Reed condoned Defendant Bauer's actions on February 9, 2008, and later agreed and participated in the malicious prosecution of the Plaintiff in violation of her Fourth Amendment rights. (See forth below paragraph 97).

60. The police audio and video recordings show Defendant Lt. Reed, and Defendant Nytes agreed with Defendant Bauer's malicious, hostile, and ill will actions towards the Plaintiff.

61. At no time do the police audio and video recordings show the Plaintiff verbally telling the Defendant Bauer, Defendant Nytes, Defendant Lt. Reed, or Officer Brim that she was a federal, state or local law enforcement officer.

62. At no time do the police audio and video recordings show the Plaintiff holding herself out to be a federal, state or local law enforcement officer to Defendant Bauer, Defendant Nytes, Defendant Lt. Reed, or Officer Brim.

63. The police audio and video recordings do show the Plaintiff informing the Defendants and Officer Brim numerous times that she was the Deputy Director for the Department of Corrections for  Prince George's County, MD, and she worked in public safety.

64. Plaintiff had a right to have a Prince George's County Badge, and display it for identification purposes. At the Plaintiff's trial, Alfred J. McMurray, Director for Prince George's County Department of Corrections testified that the Plaintiff was issued a Prince George's County Badge for identification purposes. (See Exhibit 2, Trial Transcript Page 17, Line 3-22, and Page 18, Line 1-3,)

65. At trial, Defendant Bauer falsely testifies that the Plaintiff had taken out her badge. Defendant Bauer testifies he indentified the Plaintiff had a badge holder. Defendant Bauer further testifies he could not read anything on the Plaintiff's Prince George's County issued badge because the Plaintiff's fingers were covering the entire face of the badge. Defendant Bauer further testifies he could only identify the color of the badge as gold. (See Exhibit 2, Trial Transcript Page 29, Line 15-22, and Page 30, Line 1-17)

66. On direct inquiry by Judge Ian O'Flaherty, Assistant Commonwealth's Attorney, Fairfax County, Erin Sylvester (hereinafter "Ms. Sylvester"), testifies and admits that Plaintiff had right to have a Prince Georges County badge in her possession on February 9, 2008, and to display it for " identification purposes." (See Exhibit 2, Trial Transcript Page 33, Line 2-3)

67. On the police audio recording Defendant Bauer is heard stating "I offered to have PG County police come out and inspect the car, and to leave my card when they made contact.", Plaintiff replies I know, the Police were out to my house, but they didn't leave a card because my police car was in my drive way. I called you because you called me on my voice mail. And I'm very cooperative and I'm Deputy Director for Corrections.

68. Defendant Bauer acknowledges that the Plaintiff is Deputy Director for Department of Corrections, by stating "I hear that." Plaintiff states "I have no problem calling you, and you'll hear it again. And you were very rude to me and I don't deserve that."

69. Defendant Bauer states "And you didn't identify yourself on the phone either, not that would make a difference I still got to do what I have to do."

70. At trial, Alfred McMurray testified that the Plaintiff was issued a Prince George's County unmarked vehicle, which is the same make and model that the Prince George's County Police, and Sheriff's Office utilizes for their unmarked vehicles. (See Exhibit 2, Trial Transcript Page 32, Line 13-16)

71. Plaintiff used the term "police car" because it is common term used when you have a government vehicle issued to you, and that vehicle is the same make and model that Prince Georges County Police and Sherriff's office use for their unmarked police vehicles.

72. On February 9, 2008, the day the alleged crime occurred, the police audio and video recordings show the Plaintiff arrived at the 7/11 on Hummer Road in Fairfax County, Virginia in her personal vehicle, new 2008 Mercedes Benz, and not her Prince George's County issued unmarked vehicle.

73. Upon information and belief, on or about February 12, 2008 or February 13, 2008, Defendant Bauer called Prince Georges County Department of Corrections, and verified that the Plaintiff was employed by Prince Georges County as a Deputy Director of the Department of Corrections;  Prince George's County Department of Corrections issued the Plaintiff a County Badge for identification purposes; Prince George's County Department of Corrections issued the Plaintiff  an unmarked county vehicle which was

the same make and model as Prince George's County Police, and Sherriff's Office unmarked police cars.

74. On February 13, 2008, approximately 9:00 am, Plaintiff's supervisor Alfred J. McMurray Director for Prince George's County Department of Corrections (hereinafter Director) asked to see her. He stated "Do you have anything to tell me about an incident with police. Plaintiff's initial response was no because she believed based on Defendant Bauer and Lt. Reid that this incident was over when she departed on 2/9/08, other than if the private citizens wanted to go to court regarding reckless driving towards Plaintiff's husband. Then the Director asked Plaintiff again. Plaintiff told him about the incident on 2/9/08. Plaintiff asked "who did you talk with?

75. At that time the Director McMurray told the Plaintiff that he spoke with Fairfax County Police Officer, Defendant Bauer. The Director indicated that Defendant Bauer verified that the Plaintiff was employed by Prince Georges County as a Deputy Director of the Department of Corrections; Prince George's County Department of Corrections issued the Plaintiff a County Badge for identification purposes; that Prince George's County Department of Corrections issued the Plaintiff an unmarked county vehicle which was the same make and model as Prince George's County Police, and Sherriff's Office unmarked police cars.

76. Then the Director stated that Defendant Bauer told him that the incident involved Plaintiff's husband, Mr. Clark, Plaintiff's husband was a convicted felon, and she owned a 2008 Mercedes Benz S63 with 22 inch wheels, implying that Plaintiff's husband was a drug dealer. Director McMurray informed the Plaintiff that nothing

would come of this unless Fairfax County Police pursued this. Director McMurray also stated that "I believe that this is going to become a big issue."

77. Plaintiff was in shock because she did not know her husband was a convicted felon. Plaintiff replied "if my husband is a convicted felon I am going to get my marriage annulled immediately." The Plaintiff successfully had the marriage annulled a short time after learning her former husband was a convicted felon.

78. On February 13, 2008, at 11:46 am, Defendant Bauer, maliciously and without probable cause, charged Plaintiff with the crime of Impersonating Officer, and procured and caused there to be issued a warrant for the arrest of Plaintiff. (See Exhibit 3, a true copy of the Warrant of Arrest for Plaintiff).

79. At the time the arrest warrant was obtained, February 13, 2008, at 11:46 am, Defendant Bauer had no probable cause or facts that could lead him to believe that the Plaintiff had committed the crime of Impersonating Officer. In fact no reasonable law enforcement officer would have thought the alleged crime had occurred nor was it legally tenable.

80. Defendant acted maliciously by knowingly instituting baseless criminal charges against Plaintiff and acting without probable cause. At the time defendant filed these charges, he did not believe that they were valid, but filed them only out of hostility and ill will against Plaintiff.

81. Director McMurray lied to Plaintiff during their meeting on February 13, 2008 at 9:00 am. At the Plaintiff's criminal trial Director McMurray testified that he received the information about the day the alleged crime occurred, February 9, 2009, second hand from his Division Chief of the Office of Professional Responsibilities and Legal

Affairs; however Director McMurray did testified to the fact that Defendant Bauer contacted Prince Georges County Department of Corrections. (See Exhibit 2, Trial Transcript Page 19, Line 4-18)

82. On or about February 14, 2008, Director McMurray met with the Plaintiff again. He informed her that he had notified Vernon Herron, Deputy Chief Administrative Officer Public Safety and Homeland Security for Prince George's County, Maryland of the incident. He also told the Plaintiff that Fairfax County, Virginia had issued a warrant for her arrest. Director McMurray told the Plaintiff to go and take care of this.

83. On or about February 14, 2008, at approximately 3:00 p.m. Plaintiff contacted Defendant Lt. Reed and informed him that she was told by Director McMurray that Defendant Bauer contacted her Director McMurray and informed him that Fairfax County had issued a warrant for her arrest.

84. At that time Plaintiff requested a copy of his police report, documentation indicating that there was no warrant for her arrest, and a letter from Fairfax County Police indicating that she was not involved in any wrong or illegal doing. Defendant Lt. Reed informed the Plaintiff that he could not provide her with a full police report, but could provide excerpts and would print out that there were no warrants for her after he ran a check. Lt. Reed informed the Plaintiff that he would call me back in approximately 30 or 40 minutes after he put his uniform on.

85. On or about February 14, 2008, approximately at 4:30 p.m., Defendant Bauer called the Plaintiff back instead of Defendant Lt. Reed. I informed Defendant Bauer that due to legal reasons that I needed to speak to Lt. Reid.

86. On or about February 14, 2008, approximately at 4:45 p.m. Lt. Blechl contacted the Plaintiff and stated that he was Defendant Bauer's direct supervisor and not Defendant Lt. Reed. At that time he stated "he would provide the Plaintiff with an update regarding her status." Lt. Blechl informed the Plaintiff that indeed there was a warrant for her arrest for impersonating a police officer. Plaintiff asked when was this incident alleged to occur and Lt. Blechl stated "He could only tell her the charge and that she had a warrant for my arrest."He asked the Plaintiff "Was she going to turn herself in today?" Plaintiff informed Lt. Blechl that she would be seeking an attorney and discontinued my phone conversation with him.

87. On or about February 15, 2008 Plaintiff did not go to work due to being emotionally unstable as a result of the circumstances.

88. On February 19, 2008, at approximately 2:00 pm, Plaintiff and her attorney, Darwyn L. Easley arrived at the Fairfax County Magistrates Office, and was instructed to sit and wait there. The Plaintiff and her attorney waited for 45 minutes to an hour for Defendant Nytes to personally came off his patrol duty and put handcuffs on the Plaintiff and placed her under arrest.

89. Upon arriving at the Fairfax County Adult Detention Center Defendant Nytes initiated his audio recorder.

90. Plaintiff and her attorney were instructed to walk over to the Fairfax County Adult Detention Center to meet Defendant Nytes. Defendant Nytes put handcuffs on the Plaintiff and placed her under arrest.

91. Defendant Nytes' conduct was done with malicious intent, and only out of hostility and ill will against the Plaintiff. Defendant Nytes is heard on the police recording asking the Plaintiff while in handcuffs, "If she ever toured this Correction facility before."

92. The Plaintiff was released on her own recognizance after appearing before the Magistrate.

93. On or about On February 21, 2008, Plaintiff was terminated by Mr. Vernon Herron Deputy Director Chief Administrator Public Safety/Director of Homeland Security, and Donald Bridgeman, Director of Office of Human Resources Management.

94. On February 21, 2008, approximately 2 hours after being terminated Mr. Vernon Herron called the Plaintiff, after speaking with Plaintiff's husband, and informed the Plaintiff that Director McMurray had told him that the incident occurred differently and that he was going to make every effort to get the Plaintiff's job back.

95. Upon the Plaintiff's arrest, every major news organization in the Maryland, DC, and Northern Virginia area ran reports disclosing to the plaintiffs current criminal predicament.

96. Defendant Bauer's malicious actions did out of hostility and ill will towards the Plaintiff cause irreparable harm to the Plaintiff's private practice, as a professional licensed psychologist in Clinton, Maryland.

97. The publicity surrounding the Plaintiff's criminal predicament caused some of her patients to stop utilizing her services.

98. In February 2008 the Plaintiff entered into out-patient mental therapy to help mentally adjust to her criminal predicament, and the fact that she was terminated by her employer, and currently is continuing outpatient mental therapy.

99. On or about March 4, 2008, Plaintiff's attorney, Darwin Easley interviewed Defendant

Bauer, and Defendant Lt. Reed. Both Defendant Bauer and Defendant Lt. Reed stated

that the Plaintiff held herself out as a law enforcement officer on February 9, 2008, the

day the alleged crime occurred, even though they both had prior knowledge that the

Plaintiff had a right to have her Prince Georges County issued badge and use it for

identification purposes, as was her intent was on February 9, 2008; and she was issued

a Prince Georges County vehicle, that was the same make and model, as the Prince

George's County Police, and Sheriff's Office unmarked police vehicles.

100.     On April 4, 2008, the Plaintiff's case was dismissed by Judge Ian O'Flaherty for

lack of probable cause, and the fact that the crime did not occur. Judge Ian O'Flaherty

asked Assistant Commonwealth's Attorney, Fairfax County, Erin Sylvester a series of

questions after 30 minutes of witness testimony, and reviewing and hearing the police

audio and video recordings. Judge Ian O'Flaherty asked Judge Ian O'Flaherty asked

Ms. Sylvester the following:

> THE COURT: Can you point me on the right track; tell me what in that tape indicates
> that there was any offense committed?
> MS. SYLVESTER: Yes, at the beginning, the displaying of the badge which is
> referenced later.
> THE COURT: How many times did she identify herself as Deputy Director of
> Corrections in Prince George's County?
> MS. SYLVESTER: Numerous times.
> THE COURT: Then where do you think the offense is?
> MS. SYLVESTER: Your Honor, there's the displaying of the badge which if it were truly
> for just --
> THE COURT: Which according to your witness she has every right to display.
> MS. SYLVESTER: For identification purposes.
> THE COURT: Correct.
> MS. SYLVESTER: But she didn't do that. She held it up and she blocked it so that he
> could tell it was a badge but he couldn't read what it said. He couldn't see that it was
> anything legitimate. He just saw that she was trying to show THE
> COURT: Didn't she a number of times that evening tell him that she was the Deputy
> Director of Corrections in Prince George's County?
> MS. SYLVESTER: Right, and the implication of not only her statements but showing the
> partial badge as well as saying that she has her police car parked in her driveway she's

[22]

imply – and asking for professional courtesy. She was asking to be treated as a law
enforcement officer --
THE COURT: But she indicated she was in
MS. SYLVESTER: -- and holding herself out as one.
THE COURT: -- public safety but she never indicates she was in law enforcement at any
time.
MS. SYLVESTER: Your Honor, those things all together, the showing of the badge, the
asking for professional courtesy, saying that she has her
THE COURT: There's no case. This case is dismissed.
(See Exhibit 2, Trial Transcript Page 32, Line 3- Page 34, Line 7)

## FIRST COUNT
## MALICIOUS PROSECUTION

101.     For the purpose of this count, the plaintiff incorporates by reference each and

every of the previous paragraphs, and hereby incorporates them in this Count as though

fully set forth herein

102.     Defendants seized, detained, arrested and prosecuted the Plaintiff without

probable cause for the crime of Impersonating officer before the Fairfax County

General District Court. After being detained, released on her own recognizance in the

Fairfax County Adult Detention Center on the false charge, prosecuted in Fairfax

County General District Court, the charge was dismissed by Judge Ian O'Flaherty,

Fairfax County General District Court Judge for lack of probable cause, and the fact

that the crime did not occur.

103.     The actions of each of the Defendants in initiating this criminal prosecution

constituted malicious, reckless disregard and depraved indifference for the rights and

liberties of the Plaintiff and were intended to injure and harm the Plaintiff.

104.     As a direct and proximate result of the aforementioned acts and the deliberate

indifference of each of the defendants, the Plaintiff was terminated from her high

profile job as Deputy Director of Department of Corrections; suffered great harm to her

private practice as a licensed professional psychologist in Clinton, Maryland, by losing

earnings in her private practice, losing patients, and losing prospective patients;

Plaintiff has been greatly harmed in her professional reputation, character, and credit;

Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily

distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large

sums of money in securing services of an attorney to defend her in the baseless criminal

charges. In addition, the plaintiff contends the intended conduct of each of the

defendants was malicious and vindictive.

SECOND COUNT
VIOLATION CIVIL RIGHTS--FOURTH AMENDMENT

105.    For the purpose of this count, the plaintiff incorporates by reference each and

every of the previous paragraphs, and hereby incorporates them in this Count as though

fully set forth herein

106.    The Plaintiff contends the above acts of, wrongful detention and malicious

prosecution collectively and individually committed by each of the Defendants,

constitute violations of Plaintiff's Fourth Amendment rights to be free from arrest

without probable cause as guaranteed by the United States Constitution in violation of

<u>42 U.S.C.A. § 1983</u>.

107.    The Plaintiff further contends, the above acts of wrongful detention and malicious

prosecution collectively and individually committed by each of the Defendants, to

verify that the Plaintiff was employed by Prince Georges County as a Deputy Director

of the Department of Corrections; Prince George's County Department of Corrections

issued the Plaintiff a County Badge for identification purposes; that Prince George's

County Department of Corrections issued the Plaintiff an unmarked county vehicle

which was the same make and model as Prince George's County Police, and Sherriff's

[24]

Office unmarked police cars, and then file charges against the Plaintiff for Impersonating officer constitutes reckless disregard, deliberate indifference, willful and knowing deprivation of the Plaintiff's rights as protected by the Fourth Amendments of the United States Constitution.

108. These actions of the Defendants, were in violation of the plaintiff's constitutional rights pursuant to 42 U.S.C.A. § 1983, and were performed under the color of state law by each of the Defendants as members of the Fairfax County Police Department.

109. As a direct and proximate result of the aforementioned acts and the deliberate indifference of each of the defendants, the Plaintiff was terminated from her high profile job as Deputy Director of Department of Corrections; suffered great harm to her private practice as a licensed professional psychologist in Clinton, Maryland, by losing earnings in her private practice, losing patients, and losing prospective patients; Plaintiff has been greatly harmed in her professional reputation, character, and credit; Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large sums of money in securing services of an attorney to defend her in the baseless criminal charges.

## THIRD COUNT:
## CONSPIRACY TO VIOLATE
## CIVIL RIGHTS FOURTH AMENDMENT

110. For the purpose of this count, the plaintiff incorporates by reference each and every of the previous paragraphs, and hereby incorporates them in this Count as though fully set forth herein

111.     Pursuant to the conspiracy formed among defendants at a place and date unknown
to Plaintiff, Defendants maliciously wrongfully, willfully, and out of hostility and ill
will towards the Plaintiff conspire and agree to purposely injure the Plaintiff in a
systematic manner that was calculated to violate the Plaintiff's rights to be free from
arrest without probable cause under the Fourth Amendment as guaranteed by the
United States Constitution in violation of 42 U.S.C.A. § 1983.

112.     The Plaintiff contends the above acts of wrongful detention and malicious
prosecution collectively and individually committed by each of the Defendants, who
did conspire and agree for the purpose of violating the Plaintiff's rights to be free from
arrest without probable cause under the Fourth Amendment as guaranteed by the
United States Constitution in violation of 42 U.S.C.A. § 1983.

113.     The plaintiff further contends, the above acts of wrongful detention and malicious
prosecution collectively and individually committed by each of the defendants, who
filed charges and had an arrest warrant issued against the Plaintiff without probable
cause; who did come off patrol duty to personally place handcuffs on the Plaintiff and
place her under arrest although she had turned herself in an hour before at the Fairfax
County Adult Detention Center, but had to wait until the defendant arrived; who did fail
to stop a subordinate from filing charges and having an arrest warrant issued against the
Plaintiff without probable cause; constitutes actions by the Defendants to conspire and
agree to act in reckless disregard, deliberate indifference, and to willfully and
knowingly deprive the plaintiff of rights protected by the Fourth Amendment of the
United States Constitution.

114.     These actions of the Defendants, were in violation of the Plaintiff's constitutional

rights pursuant to 42 U.S.C.A. § 1983, and were performed under the color of state law

by each of the Defendants as members of the Fairfax County Police Department.

115.     As a direct and proximate result of the aforementioned acts and the deliberate

indifference of each of the defendants, the Plaintiff was terminated from her high

profile job as Deputy Director of Department of Corrections; suffered great harm to her

private practice as a licensed professional psychologist in Clinton, Maryland, by losing

earnings in her private practice, losing patients, and losing prospective patients;

Plaintiff has been greatly harmed in her professional reputation, character, and credit;

Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily

distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large

sums of money in securing services of an attorney to defend her in the baseless criminal

charges.

FOURTH COUNT
SUPERVISOR LIABILITY IN VIOLATION OF 42 U.S.C.A. § 1983

116.     For the purpose of this count, the plaintiff incorporates by reference each and

every of the previous paragraphs, and hereby incorporates them in this Count as though

fully set forth herein.

117.     At all times relevant to this Complaint Defendant Bauer, and Defendant Nytes, as

police officers of the Fairfax County Police Department, were acting under the

direction and control of Defendant Lt. Reed, Defendant Fairfax County, Defendant

Bulova.

118.     Acting under color of law and pursuant to official policy or custom, Defendant Lt.

Reed and Defendant Fairfax County knowingly, recklessly, or with deliberate

indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant police officers in their duties to refrain from: (1) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities; (2) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities; (3) unlawfully and maliciously assaulting and beating a citizen or otherwise using unreasonable and excessive force before, during, or after the making of an arrest, whether the arrest was lawful or unlawful; (4) conspiring to violate the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Virginia; and (5) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

119.    Defendant Lt. Reed, and Defendant Fairfax County had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

120.    Defendant Lt. Reed, and Defendant Fairfax County had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights failed or refused to do so.

121.    Defendant Lt. Reed and Defendant Fairfax County directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers heretofore described.

122.     As a direct and proximate cause of the acts of Defendant Lt. Reed, and Defendant Fairfax County as set forth in the paragraphs above, Plaintiff suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fourth Amendment of the Constitution of the United States and protected by 42 U.S.C. § 1983.

123.     As a direct and proximate result of the aforementioned acts and the deliberate indifference of each of the Defendants, the Plaintiff was terminated from her high profile job as Deputy Director of Department of Corrections; suffered great harm to her private practice as a licensed professional psychologist in Clinton, Maryland, by losing earnings in her private practice, losing patients, and losing prospective patients; Plaintiff has been greatly harmed in her professional reputation, character, and credit; Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large sums of money in securing services of an attorney to defend her in the baseless criminal charges.

COUNT FIVE.
DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C.A. § 1983 BY DEFENDANT FAIRFAX COUNTY, DEFENDANT BULOVA

124.     For the purpose of this count, the plaintiff incorporates by reference each and every of the previous paragraphs, and hereby incorporates them in this Count as though fully set forth herein.

125.     At all times material to this complaint, Defendant Fairfax County, and Defendant Bulova had in effect actual and/or de facto policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct of the individual

defendants.

126.     Defendant Fairfax County, and Defendant Bulova failed to properly train, supervise or discipline its police officers, including the individually named Defendant Bauer, Defendant Nytes, Defendant Lt. Reed, and the "John Doe" defendants and DOES, concerning correct practices in evaluating probable cause to obtain an arrest warrant with proper probable cause, thus permitting Defendant Bauer, Defendant Nytes, Defendant Lt. Reed and DOES to be in a position to violate Plaintiff's constitutional rights.

127.     Defendant Fairfax County, and Defendant Bulova, being aware that such lack of training, supervision, and discipline leads to improper conduct by its employee police officers, acted with deliberate indifference in failing to establish a program of effective training, supervision and discipline. Defendant Fairfax County, and Defendant Bulova is aware of the persistent and substantial risk of improper detention of persons based on insufficient or incorrect warrant information, and effective training, supervision, and discipline would have lessened the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens and which are officially tolerated by Defendant Fairfax County, and Defendant Bulova. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged and otherwise a direct and proximate cause of the harm to plaintiff, in violation of plaintiff's rights as guaranteed by 42 U.S.C.A. § 1983, and the Fourth Amendments to the United States Constitution.

128.     As a direct and proximate result of the aforementioned acts and the deliberate indifference of each of the Defendants, the Plaintiff was terminated from her high

profile job as Deputy Director of Department of Corrections; suffered great harm to her private practice as a licensed professional psychologist in Clinton, Maryland, by losing earnings in her private practice, losing patients, and losing prospective patients; Plaintiff has been greatly harmed in her professional reputation, character, and credit; Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large sums of money in securing services of an attorney to defend her in the baseless criminal charges.

COUNT SIX
CONSPRIRACY TO INJURE BUSINESS

129.    For the purpose of this count, the plaintiff incorporates by reference each and every of the previous paragraphs, and hereby incorporates them in this Count as though fully set forth herein.

130.    Pursuant to the conspiracy formed among defendants at a place and date unknown to Plaintiff, Defendants maliciously wrongfully, willfully, and out of hostility and ill will towards the Plaintiff conspire and agree to purposely injure the Plaintiff in a systematic manner that was calculated to destroy Plaintiff's reputation in business, her credit, and her private practice business as a Licensed Psychologist.

131.    The Defendants did maliciously, and out of hostility and ill will towards the Plaintiff conspired, agreed to, and succeeded in purposely causing harm to the Plaintiff's private practice business, and reputation as a licensed professional psychologist, in violation of Virginia Code sections 18.2-499 and 500 by conspiring and agreeing to purposely violate the Plaintiffs Fourth Amendment rights, as guaranteed by the United States Constitution, laws of the United States, laws, to be free

from prosecution without probable cause, in violation of <u>42 U.S.C.A. § 1983</u>

132.    Prior to the acts here complained of, Plaintiff enjoyed an excellent reputation for honesty and integrity and was the owner of a thriving business, which plaintiff maintained industriously. Plaintiff's credit was good and her services were much sought by patients seeking mental health therapy. Plaintiff was highly skilled, professional, and discreet in the services she provided to her patients.

133.    Since the time of the acts of defendants here complained of and as a result of such acts, Plaintiff has suffered great harm to her private practice by losing enormous amount of earnings, losing patients, losing prospective patients, and losing referrals from some of her colleagues in her profession.

134.    At all times material while furthering their conspiracy, Defendants acted willfully, wrongfully, and maliciously toward plaintiff and with the intent to injure plaintiff in her reputation, credit, and private practice business.

135.    These above described actions of the Defendants, were performed under the color of state law by each of the Defendants as members of the Fairfax County Police Department.

136.    As a direct and proximate result of the aforementioned acts and the deliberate indifference of each of the defendants, the Plaintiff was terminated from her high profile job as Deputy Director of Department of Corrections; suffered great harm to her private practice as a licensed professional psychologist in Clinton, Maryland, by losing earnings in her private practice, losing patients, and losing prospective patients; Plaintiff has been greatly harmed in her professional reputation, character, and credit; Plaintiff has suffered loss of liberty, loss of freedom, severe emotional and bodily

[32]

distress, shame, humiliation, ridicule, and embarrassment; and the Plaintiff spent large

sums of money in securing services of an attorney to defend her in the baseless criminal

charges.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY

WHEREFORE, plaintiff demands judgment against each of the Defendants for damages sustained by the plaintiff, jointly and severally, for her injuries, and:

A. As for such compensatory damages as shall be proven at trial;

B. As for such punitive damages as the jury may award and the court may allow;

C. Together with the costs and disbursements of this action;

D. Such other and further relief as to this court may deem just and proper; and

E. Attorney fees.

Dated: Greenbelt, Maryland
      April 2, 2010

Dr. Rose C. Merchant
6039 Glen Rock Avenue
Fort Washington Maryland, 20744
240.605.2882
*Plaintiff*

[33]