IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DR. ROSE C. MERCHANT,　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　Case No. 1:10cv376
　　　　　　　　　　　　　　　　　　)
FAIRFAX COUNTY, VIRGINIA,　　　)
et al.,　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## MEMORANDUM OPINION

This action grows out of plaintiff's arrest and prosecution for the misdemeanor offense of

impersonating a police officer in violation of Va. Code § 18.2-174. When these state charges

were dismissed, plaintiff brought this action against Fairfax County, the arresting officer and

other individuals alleging various claims. Resolution of threshold dismissal motions eliminated

many claims and defendants, leaving only one defendant—the arresting officer—and two causes

of action: (i) a 42 U.S.C. § 1983 claim for unlawful seizure of plaintiff, in violation of her Fourth

Amendment right; and (ii) a state law claim for malicious prosecution.[1] Defendant now seeks

summary judgment on both claims. For the reasons that follow, defendant's summary judgment

motion must be granted with respect to the malicious prosecution claim, but denied as to the

§ 1983 claim.

---

[1] *See Merchant v. Fairfax County*, No. 1:10cv376 (E.D.Va. Feb. 14, 2011) (Order); *Merchant v. Fairfax County*, No. 1:10cv376 (E.D.Va. Oct. 15, 2010) (Order). Although plaintiff's memorandum opposing summary judgment references a claim for false arrest and imprisonment, no such claim is pled in the complaint. Thus, the only claims remaining in this case, and thus the only claims under consideration in the present motion for summary judgment, are the malicious prosecution and § 1983 claims.

I.[2]

At all relevant times, plaintiff, Dr. Rose C. Merchant, served as a deputy director in the Department of Corrections for Prince Georges County, Maryland. Dr. Merchant brought this action against Fairfax County and four individual defendants, namely (i) Sharon Bulova of the Fairfax County Board of Supervisors and three Fairfax County police officers: (ii) Officer Robert Bauer; (iii) Officer Jonathan Nytes; and (iv) Lieutenant Gervais Reed.[3] Officer Bauer was the arresting officer for Dr. Merchant's police impersonation charge, and Officer Nytes and Lt. Reed assisted Officer Bauer at the scene where Dr. Merchant allegedly committed the offense.

As deputy director of corrections in Prince Georges County, Dr. Merchant supervised law enforcement officers, including uniformed and nonuniformed corrections officers, although she was not a law enforcement officer herself. Prince Georges County also issued Dr. Merchant a white, unmarked Chevrolet Impala for her use in carrying out her official duties. This vehicle was of the same model and color routinely issued to police officers, although Dr. Merchant's vehicle was not outfitted with police lights, police equipment, or other police insignia. Dr. Merchant was also issued an identification badge by the Prince Georges County Department of Corrections that accurately stated her official title as deputy director of the Department of Corrections for Prince Georges County. The badge did not indicate that she was a law

[2] All facts recited here are undisputed unless otherwise stated, and where any disputes of fact are noted, the analysis proceeds by assuming the version of the dispute most favorable to the non-movant—in this case Dr. Merchant. *See Sapphire Dev., LLC v. Span USA*, Inc., 120 Fed. Appx. 466, 470 (4th Cir. 2005).

[3] The complaint also names John Does 1-20 "being each a separate individual and being fictitious and unknown to the Plaintiff the persons or parties intended being former and or current Fairfax County Virginia employees." These individuals have not been identified during discovery, and therefore, it is appropriate to dismiss the John Doe defendants. *See Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) (holding that "if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice") (footnote omitted).

2

enforcement officer, but it was similar in size, shape, and appearance to badges commonly issued to police officers.

Although most of the pertinent events occurred on or after February 9, 2008, it is appropriate to recount the events of the previous day, when an unknown civilian driving on I-495 in Annandale, Virginia, called 911 to report being forced off the road by a black Mercedes Benz. The complainant told the dispatcher that the Mercedes was traveling at a high rate of speed and displayed flashing blue front grill lights similar to those seen on police vehicles. The complainant also reported that the car had only one occupant, a black male driver. Police dispatchers passed this information on to local units, characterizing the complainant's report as one alleging reckless driving and impersonating a police officer. Officer Bauer, who was patrolling the area at the time of the dispatch, responded and investigated the report.

After failing to locate the Mercedes in the area where it had been reported, Officer Bauer proceeded to interview the complaining witness. The complainant confirmed her report and provided Officer Bauer the license plate number of the Mercedes, which Officer Bauer used to determine that the Mercedes was registered to Dr. Merchant. Officer Bauer then called Dr. Merchant and left messages asking Dr. Merchant to return his call. Dr. Merchant responded to Officer Bauer's calls, and after speaking with Dr. Merchant and her now-former husband, Rafael Clark, Officer Bauer determined that Clark had been driving the Mercedes on the night in question. Officer Bauer then requested that Dr. Merchant and Clark meet with him and bring the Mercedes so that Officer Bauer could inspect the vehicle. Dr. Merchant and Clark agreed to meet Officer Bauer at a 7-Eleven convenient store located in Annandale, Virginia and to bring the Mercedes with them.[4]

_____

[4] Although it is not material to the summary judgment analysis, it is undisputed that Officer

3

The meeting took place in the early evening of February 9, 2008, at the designated 7-Eleven. There, Dr. Merchant and Clark met Officers Bauer, Samuel Brim, and Jonathan Nytes. Officers Brim and Nytes activated the audio and video recording equipment in their patrol cars to record the meeting. Officer Bauer, with Dr. Merchant's consent, inspected the Mercedes. His inspection revealed no police lights, blue lights, or any evidence that such lights had been installed on the vehicle. Following this inspection, Dr. Merchant requested the name of the complaining witness who reported the alleged violations. Unsure of the appropriate way to respond to this request, Officer Bauer called for a supervisor to come to the 7-Eleven. Second Lieutenant Gervais Reed responded and discussed the matter with Dr. Merchant for a short time. The matter was apparently resolved and Lt. Reed departed.

Over the course of the February 9 meeting at the 7-Eleven, Dr. Merchant made several statements that later led Officer Bauer to conclude that he had probable cause to arrest Dr. Merchant for impersonating a police officer in violation of Va. Code § 18.2-174. At some point during their meeting at the 7-Eleven, Officer Bauer observed a gold badge on Dr. Merchant's hip that was partially covered by her hand. It is undisputed that Dr. Merchant never displayed the badge directly to Officer Bauer and that Officer Bauer never saw enough of the badge to read its text or other markings. Dr. Merchant contends that she only had her hand near her badge because Officer Bauer suggested he wanted to see Dr. Merchant's identification, a request that

---

Bauer falsely told Dr. Merchant that the complaining witness reported vehicle damage in order to procure Dr. Merchant's cooperation without revealing his true objective, namely an inspection of the vehicle for police lights or for evidence that such lights had been installed. Additionally, Officer Bauer selected the Annandale convenient store for the meeting so that Dr. Merchant and her vehicle would come within Annandale jurisdiction. *See* Va. Code § 19.2-244 ("Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed.").

was apparently forgotten by both Officer Bauer and Dr. Merchant as their conversation continued.

The parties have supplied a transcript of the February 9 encounter based on the audio-video recording equipment in the officers' patrol cars, but not the recording itself. The transcript, of course, fails to capture the individuals' inflections and gestures that accompanied their words, which at times makes it difficult to understand certain statements' meaning. In any event, the transcript indicates that at some point during their conversation, Officer Bauer asked, "[W]hat do you want to show me?" Tr. of Feb. 9, 2008 Meeting, at 5 (Pl. Ex. C). Officer Bauer asserts in his affidavit that when he asked this question, he was referring to Dr. Merchant's badge, which she was touching. Dr. Merchant responded, "I'm not showing you anything." *Id.*

The transcript of the encounter reveals additional statements on which Officer Bauer relied in concluding that Dr. Merchant was impersonating a police officer. Specifically, Dr. Merchant stated that she worked in "public safety" and that she would appreciate "professional courtesy" from Officer Bauer. The transcript also makes clear that Dr. Merchant told Officer Bauer—accurately—that she was a deputy director of the Prince Georges County Department of Corrections and supervised both uniformed and nonuniformed officers. Officer Bauer also cites statements from his exchange with Dr. Merchant in which Dr. Merchant mentions having a police car in her driveway, calling it "my police car." *Id.* at 42-43. Although the parties do not dispute that Dr. Merchant used this phrase, judging the meaning of the statement, in context, is difficult from the transcript alone. It appears that Dr. Merchant was referring to the fact that officers from Prince Georges County drove by her home at the request of Officer Bauer, but did not make contact with Dr. Merchant or leave a note indicating that she should contact Officer Bauer. Dr. Merchant speculated to Officer Bauer that the officers likely did not "leave a card"

5

because they saw her "police car" in her driveway.  *Id.*[5]  But significantly, each time Dr. Merchant used the phrase "police car," she claims she raised her hands and made quotation marks with her fingers, an assertion Officer Bauer does not dispute for summary judgment purposes.[6]  Def. Br. at 4 n.5.  In other words, it appears that in this exchange with Officer Bauer, Dr. Merchant speculated that Prince Georges County officers saw what *looked like* a police car in her driveway and, out of courtesy, decided not to proceed further in their investigation on Officer Bauer's behalf.

---

[5] Just before the exchange that included this language, Dr. Merchant referred to the fact that Officer Bauer had apparently requested that Prince Georges County police officers contact Dr. Merchant or drive by her home.  The exchange continued as follows:

> Officer Bauer: I mean, I can't get in contact with someone with telephone calls.
>
> Dr. Merchant: They didn't even leave a card because I have the police car.
>
> Officer Bauer: You'd send somebody else.
>
> Dr. Merchant: Because I have a police car in the, I live in Prince Georges.  They didn't even leave a card, I have a police car in my driveway.
>
> Officer Bauer: Ma'am, I can't account for what another officer would do.
>
> Dr. Merchant: Right, I'm just telling you, I'm just telling you they didn't even leave a card because I have my police car right in the driveway.
>
> Officer Bauer: I asked them to leave my information when they made contact.
>
> Dr. Merchant: They didn't leave anything.  I called you because you called me on my voicemail.

Pl. Ex. C., at 42-43.

[6] Although the colloquial expression for this gesture is "air quotes," to be precise, the gesture involves curling the index and middle finger of each hand into the symbol for quotation marks.  The gesture is typically intended to suggest that the speaker believes the words being stated are not actually appropriate or accurate for the given situation.  *See* "air quotes," Dictionary.com Unabridged (Random House, Inc.), *available at* http://dictionary.reference.com/browse/air_quotes (last accessed April 5, 2011).

After the meeting at the Annandale 7-Eleven, Officer Bauer turned his primary attention to investigating whether Dr. Merchant committed the crime of impersonating a police officer in violation of Va. Code § 18.2-174 in the course of the 7-Eleven meeting. The statute provides:

> Any person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or who shall falsely assume or pretend to be any such officer, shall be deemed guilty of a Class 1 misdemeanor.

*Id.*

First, Officer Bauer reviewed recordings from the 7-Eleven meeting and wrote down any statements that, in his view, suggested Dr. Merchant had falsely assumed the role of a police officer in the course of the meeting. Specifically, he noted that she said (i) that she was "a public safety person," (ii) that she "worked in public safety," (iii) that she was "second in charge" at the Department of Corrections, (iv) that she was "deputy director," (v) that she wanted "professional courtesy," and (vi) that she had a "police car" in her driveway. Bauer Decl. Ex. A.

On February 10, 2008, Officer Bauer telephoned Lt. Col. Verjeana McCotter-Jacobs, Division Chief for the Office of Professional Responsibility and Legal Affairs at the Prince Georges County Department of Corrections. It is undisputed that in the course of this conversation, Lt. Col. McCotter-Jacobs informed Officer Bauer that Dr. Merchant was the Deputy Director of the Bureau of Services for the Department of Corrections, and that Dr. Merchant was a civilian who did not have a police car. Dr. Merchant does not dispute these facts. Yet, Officer Bauer asserts that Lt. Col. McCotter-Jacobs also told Officer Bauer that Dr. Merchant had obtained a badge without the authorization of the Director of the Department of Corrections, a fact that Dr. Merchant disputes, and resolution of this dispute is not possible on

7

this record.[7] In any event, the parties do not dispute that Lt. Col. McCotter-Jacobs told Officer Bauer that badges were authorized for *some* civilian officials in the department.

Following this conversation, Officer Bauer reviewed Va. Code. Ann. § 18.2-174 to determine whether Dr. Merchant had violated the statute by impersonating a law enforcement officer during their meeting at the 7-Eleven. He also claims to have reviewed the case of *English v. Commonwealth*, 43 Va. App. 370 (Ct. App. 2004), in which the Court of Appeals of Virginia upheld the conviction of a fugitive recovery agent—*i.e.*, a bounty hunter—for violating § 18.2-174. Finally, Officer Bauer met with Deputy Commonwealth Attorney for Fairfax County Ian Rodway, and based on a review of Officer Bauer's case file, Rodway told Officer Bauer that he "had a good case" against Dr. Merchant for impersonating a police officer. Bauer Decl. ¶ 20. It must be noted that Rodway did not provide any sworn testimony in this matter, and thus only Officer Bauer's recollection of their conversation is provided in the summary judgment record. Additionally, Officer Bauer does not make clear in his declaration what he told Rodway in order to elicit the opinion that Officer Bauer had a "good case" against Dr. Merchant. In any event, it is undisputed that on February 9, 2008, Officer Bauer provided sworn testimony before Magistrate Claude Beheler in support of an arrest warrant for Dr. Merchant for violating Va. Code § 18.2-174. Because Officer Bauer's testimony before the magistrate was not recorded or transcribed, the summary judgment record does not reflect what Officer Bauer stated or what

---

[7] In her deposition, Lt. Col. McCotter-Jacobs stated that she does not recall telling Officer Bauer that Dr. Merchant lacked such authorization, but that it would have been her standard response to such a question that only the Director of the Department of Corrections could authorize issuance of a badge. Although the testimony is not abundantly clear on this point, reading the testimony in a light most favorable to Dr. Merchant suggests that Lt. Col. McCotter-Jacobs found Officer Bauer's recollection of the conversation with respect to the badge authorization inconsistent with her most likely responses to such questions. As discussed in note 9 *infra*, there is a genuine dispute of fact as to whether Officer Bauer was actually told that Dr. Merchant was not authorized to have a badge.

evidence he presented to the magistrate concerning these events. Yet, it is undisputed that the magistrate found probable cause based on Officer Bauer's testimony and issued the arrest warrant for Dr. Merchant.

The case against Dr. Merchant for impersonating a police officer went to trial on April 17, 2008. During the course of the Commonwealth's presentation of its case in chief, the judge *sua sponte* dismissed the case for lack of evidence, pointing to the fact that Dr. Merchant was authorized to carry her badge and had stated her position with the Prince Georges County Department of Corrections accurately. *See* Pl. Ex. D, at 34 (Trial Transcript) ("THE COURT: 'There's no case. This case is dismissed.'"). Following the dismissal of her criminal charges, Dr. Merchant brought this action for damages asserting that her arrest and prosecution were unlawful, caused her to lose her job, and ruined her career.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

## III.

Officer Bauer argues that he is entitled to summary judgment for two reasons. First, he contends that the summary judgment record entitles him to qualified immunity. Second, he

9

contends that the malicious prosecution claim fails because no reasonable jury could find on this record that he acted with the requisite malice. Each contention is separately addressed.

## A.    Qualified Immunity

The qualified immunity analysis proceeds in two steps, although the steps may be taken in whatever order may be appropriate for the case at bar. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).[8] The first step in this analysis is to determine whether the summary judgment record, taken in the light most favorable to Dr. Merchant, demonstrates that Officer Bauer violated Dr. Merchant's constitutional rights. *Saucier*, 533 U.S. at 201. If no such violation is established, then Dr. Merchant cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." *Id.*; *see also Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002). If the facts alleged show a constitutional violation, "the next step is to ask whether the constitutional right was clearly established in the specific context of the case." *Figg*, 312 F.3d at 635. In this regard, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. It is further well settled that the "inquiry is an objective one," such that the "officer's motives, intent, or propensities are not relevant." *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir.

---

[8] In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court had held that the qualified immunity analysis is a two-step analysis that must proceed "in proper sequence." *Id.* (noting that the first question is whether a constitutional violation occurred, and the second is whether the right in issue was clearly established). Although lower courts as a practical matter often skipped the first step in the qualified immunity analysis and assumed without deciding that a violation existed, the Fourth Circuit routinely required that the steps be taken in order. *Ruttenberg v. Jones*, 283 Fed. Appx. 121, 132 (4th Cir. 2008) (finding that the district court erred by deciding that the violation, if any, was not clearly established, rather than first determining whether a violation occurred on the record presented). The Supreme Court has since held in *Pearson*, however, that the sequence of steps, while "often appropriate," is not "mandatory," and courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818. Here, it is appropriate to consider the steps in the order originally suggested by *Saucier*.

1996). Thus, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Ultimately, the doctrine of qualified immunity ensures that "officials are not liable for bad guesses in gray areas," but rather, that "they are liable for transgressing bright lines." *Figg*, 312 F.3d at 636.

Thus, the analysis appropriately begins with whether the facts, taken in the light most favorable to Dr. Merchant, establish that Officer Bauer violated Dr. Merchant's Fourth Amendment right to be free from unreasonable seizures. In this regard, it is well settled that "the Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007). Here, the constitutional right allegedly violated by Officer Bauer was Dr. Merchant's Fourth Amendment right not to be arrested for violating Va. Code Ann. § 18.2-174 without probable cause to believe that a violation of that statute had occurred.

The determination of probable cause is an objective one, and the analysis requires asking whether, "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) (noting that courts may "credit[] the practical experience of officers who observe on a daily basis what transpires on the streets"). The Supreme Court has emphasized that probable cause is a "practical, nontechnical conception" that turns on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*Illinois v. Gates*, 462 U.S. 213, 231 (1983) (internal quotation marks and citations omitted). This analysis requires considering the totality of circumstances known to the officer at the time. *Id.* (finding that the totality of circumstances justified a probable cause determination based in part on an anonymous letter where several allegations in the letter were corroborated by subsequent police surveillance).

In essence, therefore, the first step in the qualified immunity analysis requires determining whether the facts known to Officer Bauer—taking those facts in the light most favorable to Dr. Merchant—would warrant the belief in a prudent person that Dr. Merchant, in the course of the 7-Eleven meeting, impersonated a law enforcement officer in violation of § 18.2-174. The undisputed, material facts pertinent to this issue are as follows:

i. Dr. Merchant told Officer Bauer (a) that she was a deputy director in the Department of Corrections, (b) that she supervised uniformed law enforcement officers, and (c) that she worked in the field of public safety. All of these statements were accurate, as Officer Bauer himself subsequently verified.

ii. Dr. Merchant did not explicitly state (a) that she was a police officer, (b) that she had a police rank, or (c) that she had police powers.

iii. Although Dr. Merchant was authorized to have a white Chevrolet Impala of the model and color typically used by some law enforcement officers, she was not authorized to install police lights on the vehicle. Dr. Merchant's vehicle did not have police lights, nor was there any evidence that police lights had ever been installed or removed from the vehicle.

iv. During the meeting at the 7-Eleven, Dr. Merchant referenced having a "police car" in her driveway, but she visibly made quotation marks with her fingers when stating the words "police car."

v. Dr. Merchant carried a gold badge on her hip that was partially covered by her hand during the meeting with Officer Bauer. When asked if she wanted to "show [him] something," Dr. Merchant responded that she did not. At no time did she display the badge to Officer Bauer or anyone else, nor did she assert that she had a police badge. At no time did Officer Bauer ask to see the badge.

vi. Dr. Merchant expressed displeasure with the way Officer Bauer proceeded with his investigation of her and her former husband, and she suggested that Officer Bauer should have shown her "professional courtesy" given her position with the Department of Corrections.

Additionally, Officer Bauer contends that Lt. Col. McCotter-Jacobs told him that Dr. Merchant was not authorized to have a badge, a fact that Dr. Merchant disputes. Because this dispute of fact is genuine on this summary judgment record,[9] it is appropriate to assume the

---

[9] Lt. Col. McCotter-Jacobs does not recall telling Officer Bauer that Dr. Merchant was not authorized to carry a badge. In these circumstances, Officer Bauer argues his recollection must be viewed as undisputed for summary judgment purposes. This is not quite correct. It is true generally that a party may not create a genuine dispute of fact as to a witness's testimony merely by noting that another witness who was present does not recall the events. *See Alford v. Cumberland County*, 2007 U.S. App. LEXIS 24138, *5-6 n.4 (4th Cir. Oct. 15, 2007) (finding no genuine dispute where three witnesses testified that the entering police officers yelled "get down" but a fourth witness did not recall the same); *see also Anderson*, 477 U.S. at 256 (a party cannot defeat summary judgment "merely asserting that the jury might, and legally could, disbelieve" a particular's witness's testimony). But it is important to note that this principle is a corollary of the overarching rule that the non-moving party on summary judgment must cite specific facts in the record, rather than rely on unsupported assertions or speculation. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252. Thus, the Fifth Circuit has sensibly noted that circumstantial evidence can provide a genuine basis for a factual dispute even where only one witness offers direct testimony concerning the event,

version of the dispute most favorable to Dr. Merchant. *See Sapphire Dev., LLC v. Span USA, Inc.*, 120 Fed. Appx. 466, 470 (4th Cir. 2005) (noting that on summary judgment, a court must accept the non-movant's version of any fact in genuine dispute). Thus, it is appropriate to assume for the purposes of summary judgment that Lt. Col. McCotter-Jacobs did not tell Officer Bauer either that Dr. Merchant was authorized to have a badge or that she was not so authorized.

All of these facts, taken in a light most favorable to Dr. Merchant, do not establish a basis for probable cause that Dr. Merchant violated Va. Code § 18.2-174. No prudent person knowing these facts would be warranted in believing that Dr. Merchant had violated the statute in the course of the February 9 7-Eleven meeting, given Dr. Merchant accurately stated her position in the Department of Corrections, never exercised any police authority or powers, and never explicitly claimed to be a police officer. Furthermore, while Officer Bauer relies heavily on Dr. Merchant's references to her "police car," the fact—undisputed for summary judgment purposes—that Dr. Merchant made quotation marks with her fingers when stating "police car" supports Dr. Merchant's contention that she was merely indicating a *resemblance* between her

---

particularly in a case where "questions about the credibility of key witnesses loom . . . large." *See Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000). Here, Lt. Col. McCotter-Jacobs' testimony, read in the light most favorable to Dr. Merchant, suggests that Lt. Col. McCotter-Jacobs merely told Officer Bauer that she did not *personally* authorize Dr. Merchant to have a badge, as that authorization could only be given by the Director of the department. While Officer Bauer contends that Lt. Col. McCotter-Jacobs told him that she subsequently had a conversation with the Director in which the Director confirmed that Dr. Merchant was not authorized to have a badge, there are two grounds for disputing this testimony. First, neither Lt. Col. McCotter-Jacobs nor the Director himself remember having this conversation. This is significant inasmuch as it would be surprising for the conversation to be forgotten by *both* of the parties supposedly present for it, particularly where Lt. Col. McCotter-Jacobs supposedly had this conversation with the director and then relayed the import of the conversation to Officer Bauer. Second, the Director was apparently aware that Dr. Merchant was authorized by a previous director to have a badge, which calls into question whether he would have asserted otherwise to Lt. Col. McCotter-Jacobs. In sum, the record facts establish a genuine basis on which to dispute Officer Bauer's assertion that Lt. Col. McCotter-Jacobs told him that Dr. Merchant was not authorized to have a badge, and thus the fact cannot be accepted as true for the purposes of summary judgment.

car and a police car. Indeed, if Dr. Merchant had a genuine police car in her driveway, there would be no reason for her to frame her reference to "police car" with gestured quotation marks.

In support of his contention that the facts support probable cause, Officer Bauer cites the Virginia Court of Appeals decision in *English v. Commonwealth*, the same case he purportedly relied upon prior to seeking Dr. Merchant's arrest warrant. There, the Court of Appeals upheld the conviction of a bounty hunter for impersonating a police officer in the course of trying to locate a fugitive. In *English*, the defendant, who had no law enforcement powers, drove behind a vehicle matching the description of a vehicle owned by a known fugitive and flashed his headlights until the driver pulled over. 43 Va. App. at 372-73. The defendant approached the driver's side of the vehicle while wearing a visible gold badge around his neck that indicated he was part of a "special investigations unit" of a law enforcement body. *Id.* The defendant told the driver he was with the "violent crimes unit," and he asked the driver for identification. He then asked the driver to step out of the vehicle and questioned her about, *inter alia*, whether she had been drinking. Only after the driver suggested she recognized the defendant did he admit that he was a bounty hunter and that the driver was not the person he was seeking, at which time the encounter concluded. *Id.* Viewing that trial record in a light most favorable to the Commonwealth, the Court of Appeals upheld the conviction, finding the defendant had exceeded his authority as bounty hunter, unlawfully detained the driver, and misled the driver based not only by his questions and demeanor, but also with his badge, which falsely indicated he was part of a law enforcement body. *Id.* at 373-74.

The facts of *English* are easily distinguishable from the facts known to Officer Bauer with respect to Dr. Merchant's conduct at the 7-Eleven meeting. Unlike the defendant in *English*, Dr. Merchant did not attempt to exercise any law enforcement power—such as pulling

15

over a vehicle. Nor did Dr. Merchant exaggerate or misstate her title or authority with Prince

Georges County. While she did carry a badge, she did not show the badge to Officer Bauer,

much less use the badge to mislead him into believing she was an officer, as the defendant did in

*English*. Additionally, it is undisputed that Lt. Col. McCotter-Jacobs told Officer Bauer that

badges were authorized for some civilian officials in the department.[10] Given that Officer Bauer

knew that non-law-enforcement officers carried badges in the Department of Corrections, a

prudent person armed with this information would not conclude, as Officer Bauer did, that Dr.

Merchant's badge, which he never was shown nor asked to see, was evidence that she was

impersonating a law enforcement officer.

There is a final, critical distinction between Dr. Merchant and the defendant in *English*:

the misled party in *English* was a civilian driver, not, as here, an experienced police officer.

When considering whether Dr. Merchant intentionally impersonated a police officer, a prudent

person would take into account the fact that Dr. Merchant was speaking to a police officer.

Officer Bauer apparently believed that Dr. Merchant's intention was to mislead him into thinking

she was a police officer by accurately stating her position and authority with the Department of

Corrections in all respects. This is passing strange. Any prudent person would recognize the

distinction between administrative officials who work with and even supervise law enforcement

officers on the one hand, and on the other, those who are themselves law enforcement officers.

Dr. Merchant's position clearly falls on the administrative side of this demarcation, and her

statements at the 7-Eleven meeting did not suggest otherwise. Therefore, no prudent person

---

[10] Although Officer Bauer asserts that Lt. Col. McCotter-Jacobs told him Dr. Merchant was not authorized to have a badge, the summary judgment record leaves a genuine dispute as to the veracity of this statement, making it incompetent summary judgment evidence. *See* note 9, *supra.*

would conclude, as Officer Bauer did, that there was probable cause to believe that Dr. Merchant impersonated a police officer.

In essence, the grounds Officer Bauer purportedly relied upon to find probable cause consist of little more than a list of phrases used by Dr. Merchant taken out of context to paint a picture of criminal activity, where no prudent person objectively evaluating the totality of the circumstances would reach the same conclusion. Accordingly, the first step in the *Saucier* analysis is resolved in favor of Dr. Merchant: the summary judgment record, taken in the light most favorable to Dr. Merchant, points to the conclusion that Officer Bauer violated Dr. Merchant's Fourth Amendment right not to be arrested for violating Va. Code. § 18.2-174 without probable cause.

Yet, this does not end the qualified immunity analysis. The second step of the inquiry requires determining whether the constitutional right violated was "clearly established" in the specific context presented here. *See Figg*, 312 F.3d at 635. In this regard, Officer Bauer contends that the scope of Va. Code § 18.2-174 was ambiguous at the time he sought an arrest warrant for Dr. Merchant. It is true that the doctrine of qualified immunity "requires that courts accord interpretive latitude" to officers making decisions about the applicability of criminal statutes. *See Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). As indicated above, the *English* case does not support Officer Bauer's conclusion that Dr. Merchant violated Va. Code § 18.2-174, but the critical question at this second step of the qualified immunity analysis is not whether a prudent person would find probable cause, but rather, whether an officer's *mistake* in finding probable cause was itself objectively reasonable under the circumstances. *Saucier*, 533 U.S. at 205. This adds a "further dimension" to the ordinary reasonableness inquiry associated with any probable determination, inasmuch as an officer is entitled to qualified immunity even

17

where he "correctly perceive[d] all of the relevant facts but [had] a [reasonable] mistaken understanding as to whether a particular [arrest] [was] legal in those circumstances." *Id.* (applying this rule in an excessive force case). Critically, much of this additional breathing room afforded officers under the qualified immunity doctrine stems from the reality that officers are "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* In sum, "[i]f the officer's mistake as to what the law requires is reasonable[,] . . . the officer is entitled to the immunity defense." *Id.* at 205.

As an initial matter, it must of course be noted that this is not the case of an officer making a split-second decision, as was the case in *Saucier*, where the plaintiff there alleged excessive force in the midst of an active arrest. *Id.* at 197. Here, Officer Bauer carefully reviewed a tape of the 7-Eleven meeting, investigated Dr. Merchant's assertions, and nonetheless incorrectly concluded that probable cause existed to believe Dr. Merchant had violated Va. Code § 18.2-174. Nevertheless, he contends that his mistake was reasonable in light of (i) the ambiguity of the statute and accompanying case law, (ii) his discussion with Deputy Commonwealth Attorney Rodway, and (iii) the issuance of an arrest warrant by a neutral magistrate.

First, while a police officer is not expected to read and parse legal cases with the same rigor expected of lawyers and judges, no reasonable police officer could mistakenly believe that the facts of the *English* case supported the arrest of Dr. Merchant. As discussed *supra*, the defendant in *English*, a civilian, pulled over another car—also driven by a civilian—and questioned the driver in a manner expected only of a police officer, all while wearing a misleading badge that by its own markings suggested a false affiliation with law enforcement. 43 Va. App. at 372-73. Dr. Merchant, by contrast, accurately characterized her official title and

18

authority in all respects, and she never attempted to exercise police powers. Additionally, unlike the defendant in *English*, Dr. Merchant was addressing a police officer who subsequently verified that all of Dr. Merchant's statements were accurate. No reasonable officer would have extrapolated from *English* that Dr. Merchant should be arrested for impersonating a police officer.[11]

Second, as to Officer Bauer's discussion with Rodway, the Fourth Circuit has recognized that a police officer's request for authorization for a warrant from a prosecutor is relevant, but not dispositive, of the qualified immunity issue. *See Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000). In *Wadkins*, the Fourth Circuit held that an officer's reliance on authorization from the Commonwealth Attorney himself—the county's "elected chief law enforcement officer"— was "compelling evidence and should appropriately be taken into account in assessing the reasonableness of [the officer's] actions." *Id.* The distinctions between the facts of *Wadkins* and the facts presented here are significant. As an initial matter, Rodway is not the chief law enforcement officer in Annandale County, and it is unclear if Rodway "authorized" the arrest warrant or merely told Officer Bauer that it appeared to be a "good case," as Officer Bauer stated in his declaration. Bauer Decl. ¶ 20. But more importantly, the record does not establish what Officer Bauer said to Rodway about his investigation of Dr. Merchant. Rodway did not provide any testimony on this record, and Officer Bauer does not recite what facts were provided to

---

[11] It is worth noting that the conclusion reached here, namely that no reasonable officer, on the record taken in the light most favorable to Dr. Merchant, could find probable cause, does not equate to a holding that Dr. Merchant is entitled to summary judgment on her § 1983 claim. If Lt. Col. McCotter-Jacobs told Officer Bauer that Dr. Merchant was not authorized to have a badge—a fact in dispute on this summary judgment record—that fact, taken together with the record as a whole, might lead a reasonable jury to conclude that probable cause did exist for Dr. Merchant's arrest for impersonating a police officer. Ultimately, it is for a jury to resolve this factual dispute, and of course, the jury is not bound to consider the record in the light most favorable to one party, as the summary judgment analysis requires. In any event, Dr. Merchant did not move for summary judgment.

Rodway during their discussion. An officer cannot provide a prosecutor with a hand-picked cluster of facts, ask the attorney's general impression of the case, and thereby relieve himself of his responsibility to exercise professional competence.[12] Therefore, the fact that Rodway told Officer Bauer that he had a "good case" against Dr. Merchant does not entitle Officer Bauer to qualified immunity.

Finally, Officer Bauer points out that a neutral magistrate reviewed the same evidence he did and concluded that probable cause existed. The Fourth Circuit has recognized that where, as here,

> a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates.

*Torchinsky*, 942 F.2d at 262. But the determination of probable cause by a magistrate, while relevant, does not dispose of the matter. *Id.* Essentially, the issuance of a warrant entitles an officer to a presumption of reasonableness, but this presumption "can be rebutted where a reasonably well-trained officer in [the arresting officer's] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant." *Id.* (citing *Malley*, 475 U.S. 335, 345-46 (1986)). The Supreme Court has similarly noted that an officer's duty to exercise professional competence cannot be avoided by reliance on a neutral magistrate. *See Malley*, 475 U.S. at 346 n.9 (holding that "if no officer of reasonable competence would have requested the warrant," the officer "cannot excuse his own default by pointing to the greater incompetence of the magistrate"). Thus, just as Officer Bauer's reliance

---

[12] *See Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) (holding that police officers are subject to qualified immunity, but not absolute immunity, from § 1983 claims, and remanding for a qualified immunity determination).

on his discussion with Rodway does not entitle him to qualified immunity, so too is the magistrate's probable cause finding not dispositive.

Here, the summary judgment record does not reveal what facts Officer Bauer provided to the magistrate. The warrant application was made orally and Officer Bauer does not state in his declaration or deposition precisely what he said to the magistrate in support of the application. As discussed *supra*, no prudent person armed with the same facts known to Officer Bauer could have concluded that probable cause existed to arrest Dr. Merchant for impersonating a police officer. Just as Officer Bauer's consultation with Rodway did not tip the scales for qualified immunity, so too is the result not altered by the mere fact that Officer Bauer was able to persuade a magistrate that probable cause existed on the basis of testimony not made a part of this summary judgment record.[13] Accordingly, the magistrate's finding, while relevant, does not alter the conclusion that Officer Bauer's legal error in finding probable cause to arrest Dr. Merchant was objectively unreasonable.

In sum, the totality of the circumstances, taking into account all of the facts noted by Officer Bauer—including his reading of the *English* case, his discussion with Rodway, and his seeking a warrant from a magistrate—does not entitle Officer Bauer to qualified immunity. No prudent person in Officer Bauer's position could conclude, even on the basis of a reasonable mistake in interpreting or applying the law, that probable cause existed to arrest Dr. Merchant for violating § 18.2-174 under the specific constellation of facts in this record. The constitutional right in issue here—namely, the right not to be arrested without probable cause based on the undisputed facts presented here, viewed in the light most favorable to Dr. Merchant—was clearly

---

[13] It may also be noted that Virginia law does not require that magistrates be trained lawyers. *See* Va. Code § 19.2-37.

established. Therefore, Officer Bauer is not entitled to summary judgment based on qualified immunity.[14]

## B.    Malicious Prosecution

Officer Bauer also contends that he is entitled to summary judgment on the malicious prosecution claim because the record fails to establish the requisite "malice" in his decision to arrest Dr. Merchant for impersonating a police officer. In Virginia, a plaintiff alleging malicious prosecution must prove that the prosecution was (i) malicious, (ii) instituted by or with the cooperation of the defendant, (iii) without probable cause, and (iv) terminated in a manner not unfavorable to him. *O'Connor v. Tice*, 281 Va. 1, 7 (2011). The first element—malice—requires demonstrating more than merely a lack of probable cause. *Reilly v. Shepherd*, 273 Va. 728, 733 (2007). A malicious prosecution plaintiff must demonstrate that the defendant possessed "any *controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333 (1998) (emphasis in original). The Supreme Court of Virginia has noted that "[a]ctions for malicious prosecution arising from criminal proceedings are not favored in Virginia." *Reilly*, 273 Va. at 733. As such, it is well settled that

> [t]he requirements for maintaining such actions are more stringent than those applied to other tort cases, and are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions, criminal prosecutions being essential to the maintenance of an orderly society.

*Id.*

Dr. Merchant's malicious prosecution claim here fails on the malice element. Dr. Merchant contends that "[t]he arrest and prosecution of the Plaintiff was manifestly unfair

---

[14] Because the disputed facts, if resolved in favor of Officer Bauer, might lead a reasonable jury to conclude that he is entitled to qualified immunity, the qualified immunity defense remains available to Officer Bauer at trial.

inasmuch as it was done without probable cause," adding that "[i]t was orchestrated by [Officer] Bauer out of frustration in not being able to prosecute the real police impersonator, Plaintiff's former husband." Pl. Br. at 25. As already noted, the lack of probable cause is insufficient to show malice. *Reilly*, 273 Va. at 733. Furthermore, Dr. Merchant fails to cite any further evidence in the summary judgment record—and no evidence is apparent—suggesting Officer Bauer was frustrated by his inability to prosecute Dr. Merchant's former husband. While generally speaking, the existence of malice is a question to be resolved by the fact finder from all the circumstances in the case, *Hudson*, 255 Va. at 333, this general proposition does not absolve Dr. Merchant of her burden on summary judgment to support each element of her claim with more than a "mere scintilla" of evidence. *See Celotex*, 477 U.S. at 324. While the summary judgment record establishes that Officer Bauer was *objectively* unreasonable in prosecuting Dr. Merchant, the inquiry here is subjective inasmuch as it requires proof of Officer Bauer's actual motives. Yet, Dr. Merchant relies only on unsupported speculation to establish Officer Bauer's motive in arresting her. As such, no reasonable jury could conclude on the basis of this summary judgment record that Officer Bauer had a controlling motive other than a legitimate interest in prosecuting criminal wrongdoing. Accordingly, Officer Bauer is entitled to summary judgment on the malicious prosecution claim.

In sum, this is a somewhat unusual case in which a police officer concluded that an individual who held a senior position with the Department of Corrections impersonated a police officer even though (i) she accurately stated her position and authority in all respects; (ii) she did not affirmatively show, nor was she asked to show, her badge; and (iii) she never exercised police powers of any kind. Although Officer Bauer is entitled to summary judgment on the malicious prosecution claim, the summary judgment record, viewed in the light most favorable

to Dr. Merchant, does not entitle Officer Bauer to qualified immunity. Therefore, it is appropriate to deny summary judgment on the § 1983 claim and proceed to a jury trial.

An appropriate order will issue.

Alexandria, Virginia
April 11, 2011

/s/

T. S. Ellis, III
United States District Judge